Good morning. I'm Jerry Hawkshurst. I'm an attorney representing Appellant, U.S. Auto Parts Network, also referred to as USAP in the papers. I'd like to reserve five minutes, please. May it please the Court? The District Court's order granting summary judgment against USAP's claims against the defendants should be reversed because the Court ignored or decided, disputed issues of material fact. On the other hand, the Court's summary judgment against the defendants' antitrust claims should be affirmed because the District Court did not have to look at competing evidence, but instead made an assessment of defendants' evidence on its own and determined that it was insufficient to get to a jury. The District Court's summary judgment order as to the copyright claims, and in particular its finding that USAP did not have ownership interest in the copyright, copyrighted materials, is erroneous for several reasons. To begin with, there are three different software, bits of software, at issue in this case. There's LNE.com, Manager, and Admin. LNE.com is the work that Lucas Thomason developed before he ever became affiliated, an employee. Sometimes called Manager 2000 or Manager 1.0. Yes, Your Honor, and that's part of the confusion in the case is that suddenly everything is called Manager, and that caused some confusion and we believe led to the District Court's erroneous determination. If I understand your briefing, your theory is that the only thing that Mr. Thomason owned was the work he had done before he started at Parts Bin. Is that correct? That's correct, Your Honor. And then anything that he did while he was at Parts Bin was Work for Hire, owned by the copyright of which was owned by Parts Bin. Is that the theory? That's correct, Your Honor, and that theory also goes forward in time to whenever he worked for USAP. So what is the evidence about what in fact was created, assuming we accepted your theory, what was created when he started at Parts Bin and thereafter, and what evidence was before the District Court on that point? The evidence before the District Court, Your Honor, was that Thomason and other employees had done the work while they were at Parts Bin and while they were at USAP. We had an expert report. There was a timely one and then an untimely one, one that the District Court wouldn't look at? Yes, Your Honor. There was one that the District Court wouldn't look at that we submitted after the briefing was finished on summary judgment. The magistrate judge wasn't communicating with the trial court judge, and so we didn't get the information and weren't able to prepare the expert report until after briefing on summary judgment had been completed. So what did the timely report, if that's what you're relying on, to show what had been created when Thomason was an employee of Parts Bin? What did that show that was made at that time and thereafter? Your Honor, the report that did the comparison of the two works showed that or concluded that the works were not identical, that Manager was a completely different bit of work from L&E Comp. And that was in the timely report, you're saying? Well, Your Honor, my contention is they were. Okay, well, one that the District Court accepted. Was that in the one that the District Court reviewed as part of the record? No, Your Honor. Okay, so what evidence was that the District Court agreed to look at? What evidence showed what had been made by Thomason after he started working at Parts Bin as an employee? That issue was not before the court, particularly on summary judgment, Your Honor. The issue was teed up really as a legal issue and not a factual issue. So the court never got to determine. That just was not an issue that was presented to the District Court. It was undisputed that some code was written, significant code was written by Thomason and other employees during their stints as employees of Parts Bin and as USAP. In fact, Mr. Thomason worked as a code writer for Parts Bin for about five years and then for some time with USAP thereafter,  Well, what I understand this situation to be is one in which Thomason, as an individual, started developing the software, writing the code, what not, for what can be given different names, but I'll call manager simply for convenience, before he was employed by anybody as an independent contractor. He was then employed by Parts Bin clearly as an employee and continued working on that software. He subsequently was employed by USAP and he continued working on that and then he, I guess at this point as an individual, develops what comes to be called admin for Parts Bin. Is that scenario generally correct? That's correct, Your Honor. Now, the legal question that arises out of that is one, frankly, that I haven't encountered before and haven't found real good authority in copyright law or elsewhere. What do you do when it's the original author that creates, as an individual, the starting point for these subsequently works that are arguably derived from the original? If Thomason had nothing to do with the original creation and his work at Parts Bin and USAP as an employee, there's a pretty strong argument that that's work for hire, but in this case he's the original creator. So it's like he's Shakespeare, he's written Romeo and Juliet and then he's hired to develop West Side Story. He's getting paid to develop West Side Story, but he's still Shakespeare and he did the original work and I don't have a legal answer to that question. I'm not sure where to look for it. Well, Your Honor, I can answer that question, but let me pick up on the Shakespeare point. Let's say that Shakespeare wrote Romeo and Juliet and wrote some other plays and I hired him because I wanted him to do a curation or write an article for my literary magazine about his works. And so I pay him the salary, work for hire, to write that article. In that article, he includes big excerpts from some of his own plays. Well, under 17... I hear the distinction you're making, but I don't want you to go down that road right now in answering the questions. I think that's a different situation. What he was working on did not change. It obviously evolved, but I don't think what he was doing for Pard Spin or USAP was writing about or studying what he did from the very beginning. He was developing software for application. It obviously got better over time, but it's not a different creature. Well, Your Honor, if I hired Larry McMurtry to write the sequel to Lonesome Dove and I paid him for that, even though he used the characters that he would have the copyrights at, I would own that work. And, Your Honor, I think it goes back to... Well, that's part of the answer to the question. You would own that work. Why? I would own that work because it's a work for hire, Your Honor. So the district court thought that the derivative work statute, when you're the original artist and then you continue to derive additional works or refine that, trumped, in essence, the work for hire statute and that everything that derived from his original work would continue to be owned by Thomason. And your argument, as I understand it, is now at the point where he starts working for an employer, any additional derivations belong to the employer. The employer is deemed to be the author. But as Judge Clifton was pointing out, is there a case or has any court decided that issue as to which prevails, the derivative work statute or the work for hire statute? We were not able to find a case, Your Honor, but I think if you look at the derivative work statute in combination with some of the other provisions, sections of that title, that it makes sense that the work for hire statute trumps it because the derivative works statute, first of all just the exclusive rights and copyright, certainly gives the owner of a copyright the right to authorize someone else to make a derivative work of it. So once he goes and works for someone and they pay him to make that derivative work, under section 201B, work for hire, the employer is considered by operation of law the author of that work. And I think that that's how you, the two statutes mesh, Your Honor. Otherwise, it doesn't make sense to pay the owner of a work to perfect his work and, according to defendants, give us only non-exclusive copyright and what we have paid him a salary to do. And that's the difference between a work for hire and a license or a contract work. So Thomason would continue to have ownership of the pre-part spin work, and your theory would be that part spin had ownership just of new code that was written or new refinements? Well, Your Honor, in the alternative, we believe that we acquired the entire work, and I can talk to the Court about the acquisition agreement. I believe that section 4.19A in the schedule, 4.19A, makes it clear that we bought the annual work. Well, is Thomason a party to that? He was not a party to that, Your Honor, but he was an employee. Well, but the issue is whether, I mean, you bought something from part spin and its principles. Thomason's not one of them. If he owns something before going to part spin, I'm not sure where he loses the right to say, That part's still mine. Whatever happened at part spin may be part spin to sell, but what belongs to Thomason separately isn't, unless part spin's got a good claim against that, and I don't see any basis for it. There's no writing where Thomason turns over that. So I'm not sure that you can say part spin's sale to USAP can reach back and cover that first part. Now, you might have a good claim against part spin for representing that it could sell it, but that's still not the same as Thomason's rights. Well, we would argue, Your Honor, that, and we do argue that as an employee of the company, or the company has obviously an ability to... I'm an employee of the US government. It can't sell anything at once that I think I own. I understand, Your Honor.  is I do believe that there is an issue of ownership as to what was created as a work-for-hire while Mr. Thomason was an employee of part spin and, again, USAP. So assuming that we agreed with it, the next steps would be that there would have had to have been a genuine issue of material fact, first, that Thomason as an employee work-for-hire owned by part spin and USAP had created something that was significant or material, and, second, that admin had violated that copyright, had copied it. And so what evidence was there before the district court that would create that sort of genuine issue of material fact? Well, there certainly is record evidence, Your Honor, of Thomason being an employee of part spin and USAP. That's uncontested. Right, but that's not the issue, right? It was like auto-vend. Was there evidence that auto-vend was created while he was an employee either of part spin or USAP, and then, second, that auto-vend was copied in admin or the alleged copyright was violated in admin? As to the first part, Your Honor, absolutely. There's evidence in the record that the source code that we claim ownership of included code that Mr. Thomason and other employees of part spin and USAP wrote. In terms of copying with admin, again, there's evidence that is in the record that significant parts of the code that we claim ownership of were included in admin, including typos. So the same trick that map makers used to make by putting an extra street on their copyrighted maps, same sort of thing showed up in their software where they had repeated the glitch in some code that we had. Turning to the code issue, I wanted to address the trade secret issue and the disclosure of the trade secrets. The district court found and defendants argued that the trade secrets were not properly disclosed or adequately disclosed. We cited several cases in our papers that show that source code, computer code, entire programs can be trade secret, and we have not found any case that holds otherwise. The cases that are discussed by the parties in the briefs or the IMAX and the 4.0 cases by this Court, and we believe that those two cases together demonstrate that we had sufficiently identified the source code. In IMAX, this Court found that the party claiming trade secrets hadn't identified its trade secret because it said the trade secret's in this projector, the tolerances of the trade secret, they have to be within 1,000. You, opposite party, go measure it, and that's our trade secret. Obviously, that's a problem. 4.0, on the other hand, the owner of the trade secret was allowed to say, look at the tolerances and specifications in the writings that we produced, in the engineering drawings and in the blueprints, and there the other party could go and look and see objectively the specifications. And this Court found that that was perfectly adequate for identifying the trade secret. The same is true here. We gave them all of the lines of the source code, so there was no mystery, there was no reverse engineering of the sort that you had in IMAX. There was code out there that they could look at and challenge as to whether it was a trade secret. And when we identified it, we identified the entire work as a trade secret, and then in the alternative, we identified modules of it that were also trade secrets. Did you have evidence in the record that, assuming you showed that you owned the trade secret, that was one of the issues and that the defendant had acquired it improperly, but I was looking for evidence in the record that you were damaged, the plaintiff was damaged due to the use of the trade secrets, and not just the portions of the manager program, but also the keywords, the ROI keywords issue. Was there evidence of that in the record? Well, Your Honor, there was certainly circumstantial evidence of use of the keywords, and the trade secret statute does not require us to show damage. We are entitled to an injunction, and we're entitled to get to a jury and have that decided. But if there was evidence of the use of the keywords, then there would have been damage to us. On that note, Your Honor, the district court's discussion about the value of manager, we believe, is misplaced. The idea that we have amortized, depreciated an asset to zero, really doesn't say anything about whether it's a trade secret or whether it has value. First of all, there's no requirement that a trade secret has to have intrinsic value. There's none. It just has to be secret and give you some competitive edge. So let me just get back to your statement about you don't need to show damages, because I'm looking at this Sergeant Fletcher, California case, which says to make a prima facie claim for misappropriation of trade secrets, that's one of the three factors. Is that not correct? Are you relying on another, a later case? No, Your Honor. Your Honor, I was speaking in terms of an injunction, in order to get an injunction to not use the trade secrets. I am not sure about what the record was in terms of damages. Okay, so you were just seeking injunctive relief. Is that correct? No, Your Honor, we had a damages claim, too, but the summary judgment did not discuss damages, qua damages. The summary judgment, the issue of summary judgment, was this value issue and therefore could we be damaged because it had no value. Now, the keyword, there is evidence in the record that we spent millions of dollars developing the keywords, and that would be the basis of our damage. If that's been misappropriated and taken from us, our investment in the keywords would be our evidence of damage. We've got two minutes left. Do you want to save any for rebuttal? Your Honor, if I can just, I need to start with the antitrust stuff. I'd just like to say that there's nothing inconsistent at all about reversing the district court's summary judgment as against us and affirming it as to our summary judgment against the antitrust claims. I believe that the proof, the court was right, the proof that was before it was not sufficient to get to a jury. Mr. Mann, I'm sure, is a fine tax person, but he's not an antitrust expert. There were none of the fundamental analysis that are necessary to establish a market. And, of course, if you don't have a market, you can't establish market power. Thank you, Your Honor. Good morning. Wendy Albers on behalf of Lucas Thomason, the software developer. I will be sharing my time with co-counsel Stephen Ingfus, who represents the Parts Geek defendants, and I'll be taking the first seven minutes of our allocated time to address issues relevant to Mr. Thomason, which concern ownership of the manager's software. And I'd like to start off by focusing on the allegations of the complaint and the evidence that was before the district court at the time he made the summary judgment ruling. And in the complaint, it is clear that U.S. Auto Parts asserted that the manager's software was originally created and developed by Thomason during his employment with Parts Bin and that USAP acquired all rights in the software through the Parts Bin acquisition. Thomason defeated... I probably had reason to think that, didn't I? Because that's what the Parts Bin acquisition documents appeared to say. Well, they may have had reason to think that, but Thomason defeated those allegations on summary judgment because he provided evidence that was unrebutted that he wrote the program before he went to work for Parts Bin while he was self-employed, merely provided Parts Bin with a non-exclusive license to use manager and any updates, and that Thomason retained all ownership rights in the computer software he created. Did he have a written agreement? Because when I look at the work-for-hire statute, it says, if it's a work prepared by an employee within the scope of his or her employment, then unless the parties have expressly agreed otherwise in a written instrument signed by them, the employer owns all of the rights comprised in the copyright of the additional work that's done. And I know the district court thought once you've made something, even if you then become an employee, you continue to have ownership in everything else that's done with respect to that item. But that doesn't seem to be what the statute says. Well, the question that you raise is actually a very interesting question, and it was not really a question that was in front of the district court at the time of the summary judgment ruling. And, you know, that is the question that they've actually raised for the very first time in their reply brief, not even in the opening brief. But they make this alternative argument in the reply brief that any updates, modifications he did while he was an employee are now works-for-hire. The problem with that article ---- But that seems to be by force of statute, is that should we not consider that? Well, I think because it was raised in the reply brief and not before the district court, no, you should not consider that. But even looking at that argument ---- But they raised it in the reply brief because they'd been given every indication by your co-defendants that this had been developed while he was working at Parkspin, not something separate. I mean, I start to understand how this case has evolved. Well, but you have to really look at how it evolved. I mean, they knew they took Mr. Thomason's deposition. The Court allowed him to take the deposition. They learned the true facts, and then they argued their argument before this argument that interests the Court right now. The argument before that was it wasn't derivative. It was entirely new software that he developed when he was at Parkspin. It was not at all related to what he developed before he went to work. That was the intermediate argument that they raised. He said in his ---- If I'm ---- In my notes, I've said that in his deposition, Thomason said that he created AutoVAN, that functionality, when he worked at Parkspin. And so USAP's theory is that, well, so Parkspin owned it as work for hire, and then it was sold to USAP. So what's wrong with that theory? The thing that's wrong with that theory is that what is very clear to me with copyright law is that the protection does not extend to the preexisting work. So even if there were some updates or modifications made, Thomason still retains ownership rights of his originally created source code. It's his code. Not of what he's done in between. He doesn't own the improvements and enhancements. Whether he may or may not, I don't know. That issue was not before the district court. They did not present evidence before the district court of what modifications were made and claim that they only owned those modifications. No, they have always argued that their position has always been from day one, they get it all. And the law is clear, they don't get it all, but Thomason still retains rights over his originally created work, his source code. That was his livelihood. And what in your view do they get? And what do they get? I don't know what they get because they didn't put any of that evidence in front of the district court. What they claim to the district court is we get it all. And we defeated that, that he gets it all. So if at least one of their theories is that whatever Thomason created before Partsvin, he created something totally different when he was working there. Now, if that were correct and they had evidence supporting that, would then Partsvin own that new program? That newly created, completely different program. Right. Correct, but that's not the evidence. That was not the evidence in front of the district court, was that there was some stand-alone new version of the software that had nothing to do with the earlier version that he created pre-employment. And in that. That was like the same story we got with the admin being different from manager. I mean, it looks like there's an evolution here. They're all related to each other. And, again, I have trouble understanding. It does seem like on one hand there's an evolution, but on the other hand they're arguing, they argued at one point, no, they're entirely different. So are the defendants. At one point you're saying admin's entirely different, doesn't relate to anything that happened to manager. You've got all these e-mails saying we've got to stay away from what USAP did because USAP owns manager. Well, putting admin aside for a minute, their story has been. . . Well, I'm just saying both parties are operating in the same shifting landscape because the understanding, the background understanding seems to have shifted. Well, I think my client has stayed consistent throughout this litigation and his position has been he's owned the original source code. He's the owner of that code. He can do whatever he wants to do with that code. The other side's position has. . . And he's employed for how many years by other parties being paid to work on that source code? She's been paid to update the code based on the, you know, expanding business.  Their argument has never been. . . Does he claim ownership rights to the upgrades? He claims he owns the source code, his originally created work. Up to the time he was employed by Parts Bin, does he claim ownership interest in any of the upgrades, enhancements, developments, whatever you call it, after the point of his employment by Parts Bin? He would claim he owns his ownership code, his source code, and the question that's before the court now really was. . . I'm trying to mystify as to whether there's an answer to my question in there someplace. It may be that the answer doesn't matter, but I'm still waiting for an answer to my question. It may be. I think the record is not clear what were these updates and versions for me to. . . Try it again. Right. Does he claim, do you understand that part of the sentence, an ownership right in developments after his employment by Parts Bin? Simple question. I don't want to know it doesn't matter. I want to know does he claim it. I think he would claim ownership rights. Okay. That wasn't hard. Now, why doesn't that matter? It doesn't matter because the other sides claim they own the entire manager software, that they own all of it. So whether he owns the updates and the revisions or not doesn't matter. He owns the original source code and they're claiming. . . But if he doesn't own the upgrades, I mean, I understand that he claims it and he has this understanding of derivatives, but let's assume that he doesn't own it because it was worked for hire during the period with Parts Bin and then Parts Bin sold whatever they owned to USAP, then to the extent admin used those updates, isn't that infringing on USAP's copyright? But they haven't shown this. I think you have to go back and look at what was the evidence in front of the district court. But they have not shown what were these updates that were made that are. . . There was evidence about AutoVend. I mean, in his deposition, Thomason, according to my notes, claims that he developed it while he was working for Parts Bin and USAP does claim that that showed up, that there was a report and the report that the district court did consider that it found AutoVend in admin. That was the untimely expert report that was submitted. No, it was in the timely one, at least according to my notes. The timely expert report, as my understanding, just compared admin and compared the most recent copy of. . . I'm looking at ER-206. It says, AutoVend Processing, I found that the logic for validating orders in the software provided by the Defendant's Counsel is substantially similar to corresponding logic in the USAP source code. Is that the wrong document? My note says that's the timely one. Okay. But again, it doesn't compare what was the source code, what was the originally protected work in that report that was timely. So I take your position with regard to the alleged infringement of enhancements, a term I'll use to do the post-employment work, drops out because it wasn't asserted by USAP on a timely basis. It wasn't. That argument was never made below. It was never made to the district court. And that argument wasn't even made in their opening brief. If you go back and look at their opening brief, they argue, consistent as they did on their motion for reconsideration, they argue it was an entirely new program that was created. What is your view, Ms. Albers, of the position currently? Your client owns everything and they own nothing. Correct. Now, I thought after Thomason's depositions that they had asked, I'm trying to remember the timeline, but they had asked to depose Thomason and to introduce a later expert report. And they came up with this theory after, and the district court allowed them to depose Thomason, did not allow them to include the expert report. And they came up with this theory after they finally deposed Thomason. I thought that was before the district court, at least as I'm recalling the timeline. No. After they deposed Thomason, the supplemental brief did not rely on their untimely expert report because that wasn't. Right. But it relied on the Thomason deposition where he did indicate he made, he created some functionalities after working at Partsbent. I'll go back and look at that. That's just my recollection. I think in the supplemental brief is when they changed their tune and argued that the updates that Thomas made to the manager program while he was at Partsbent were not derivative, were not derivative of his original pre-employment work, but they were an entirely new program, which is really inconsistent with this other theory that they're now asserting in their reply brief on appeal about the work being derivative and involving. And if you look at their expert report, if you look at that untimely expert report, it's also inconsistent with their expert's report because their expert report says that's not derivative, that this is not, that is different, that the manager's software is different software altogether and has not evolved over time as a result of modifications made to the original pre-employment work. And it's inconsistent with their claim, which has been from the start of this case, that they own the whole thing. I take it you, your client, what's your client position with respect to that assertion, that is whether manager is connected to his pre-employment work or not? It is connected. I mean, it is. He licensed the program to Portsmouth, and when he went to work there, it's the same program. He just made updates to it depending on the need for the business. What did they get during the period that he argues was work for hire? What did the companies get? Nothing. Well, they had a license to use the software, and they... Well, they had a license to use the software that he created before he was employed, and the employment period, if a claim had been asserted... Let me separate the issues because it keeps getting me confused. Separate the issue of what claim was asserted. At the time he was employed, does your client have any agreement or point to anything that would take it out of works for hire? You know, there was evidence below that the party's understanding was that he would work on the software. It was his software. He owned it. He owned the updates. That was the party's understanding. Who were the parties you're identifying by this? That's the Partspin folks, and it's in their declarations that they have submitted, and Thomason. And yet Partspin, and we'll get to your co-counsel. Don't worry. I know the clock's ticking, but this is complicated. Partspin represented when it sold to USAP that it owned this software and did not identify a license of any kind. Is that correct? In the acquisition agreement. So we have this understanding, but it's not an understanding that appears to include USAP. The understanding wasn't in writing, correct? It was just an oral understanding. Correct. And there was no communication of that to USAP? Well, no, there is record evidence that there was communication to USAP and to their investment banker during the acquisition that Thomason was the original creator and owner of the software and that they had merely a license to use it, and they had asked Thomason if they could have his permission to transfer their copy of the manager's software, which he granted. Then he goes to work for USAP. What agreement did he have with USAP with regard to who owned what he did there? Well, there was no written agreement. At one point during the employment, USAP tried to get him to sign the invention agreement where he would have been transferring his ownership rights in all works that he had created pre-employment to USAP, and he refused to sign that. So what does that mean for the work that he did while he was employed by USAP? Again, I guess that would be covered under whatever the work for hire doctrine covers for this type of situation where you've got your own originally created work and the revisions, modifications made to that work, and what are they? It was never clear in the district court, because they never ferreted this out in the district court, what was done post-employment versus pre-employment because their claim has always been they owned the whole thing. And now to the post-employment stage. What is your client's position with regard to whether admin relates to manager? I don't think it really matters for our client's point of view whether admin relates to manager. If he owns the manager code, he could do what he wants with it. Well, that's the big if. Suppose his ownership of the management code is limited to his pre-employment work, and the work for hire is owned by the people who hired him. Does admin, is it a derivative work from the previous manager? I don't think that specific issue had been looked at, and that wasn't before the district court. Again, because this, which I agree with you is an interesting issue, really arise in their reply brief for the first time on appeal and not before then, if you look at the progression of the arguments that were made in this case. Unless the court has any further questions, I'll reserve the right. We've made you work overtime. We'll give your colleague a shot. But I want to give my colleague a shot. Thank you. Good morning. May it please the Court. Stephen Angstreich for the other appellees and Cross Appellant Parts Geek. If I could start where the discussion just left off. This case, USAP's arguments evolved from the time they first filed a lawsuit to their reply brief in this case. Their argument has been inconsistent. But what was consistent from day one is the argument that counsel just made that they owned the entire code, and that the entire code was a trade secret. Now, you can't argue it both ways. You can't say the entire code's a trade secret. That includes manager 1.0 and anything else that was derivative that Mr. Thomason says he owned, and then say, oh, no, as they tried to do in their reply brief, it's just the enhancements. The problem that this court has and the district court didn't have a chance to address is what were those enhancements, and how did those enhancements find their way into admin, which the Parts Geek defendants are alleged to have used as part of this alleged copyright and trade secret. So is your argument then hinging on a waiver argument, that they waived this argument before the district court? There's no question that they waived the argument that enhancements are something different from. And if they didn't waive it, you know, if we determine in the supplemental brief or whatever, then do you agree that Partsman and then USAP owned the auto vendor, the additional code that was written? No, because I go back to the original understanding of the parties. The evidence was overwhelming in the court below that Partsman acquired a license and only a license, and at the time of the acquisition in May of 2006, in connection with the negotiations between the Partsman principals and Mr. McClain, who was the CFO of USAP, and their investment banker, RBC, they had due diligence. And during that due diligence, it was specifically advised, they were specifically advised that Partsman did not own manager. That was the case. How come that doesn't show up with the acquisition agreement? I acknowledge that the acquisition agreement. Signed by some of your clients. There's no question about it that the acquisition agreement says what it says. The district court determined that there's nothing inconsistent with a finding of a sale of a copy, as opposed to the sale of the source code, that there's an inherent difference between the underlying source code and the right to use the program itself. But putting that aside for the moment, USAP had an opportunity to bring Mr. McClain in, or somebody from RBC, their investment bankers, to create a, quote, genuine issue of material fact. Why is there a genuine issue of fact just in the fact that the acquisition agreement says something different? Because. And that your client apparently signed an SEC statement with regard to ownership of the software. If we were arguing a misrepresentation case, which is footnoted in the district court's opinion, we might be arguing about a different subject. Well, so if as a matter of law, the additions that were made by Mr. Thomas and during his employment for Partsman were owned by Partsman, and the acquisition agreement purports to convey them to USAP, why doesn't USAP then own them, own the copyright in those additions? Which additions? Well, Thomason says AutoVend, in his deposition, was one of those. Well, what you have is an alleged application in the software. One application in the entire software. Isn't that enough for a genuine issue? If USAP has evidence that was before the district court that AutoVend was found in Admin and a deposition by Thomason that he created AutoVend during his work for Partsman, is that enough to create a genuine issue of material fact regarding copyright infringement? As to whether they own the entire copyright? Well, to that functionality, isn't that enough? The problem that you have is what is it that they're arguing? They argue that they own the entirety of it, and the district court, based upon the record that was before it, determined that they didn't own the entirety of it. Now they would like to argue, post reconsideration, post the appeal, they'd now like to argue that they should be given a chance to what? Show particular functionalities of the software that became the enhancements, and that's what they owned even though they didn't copyright only the enhancements? Their copyright clearly infringed upon every aspect, even assuming you take the position that only the enhancements became work for hire and therefore owned by Partsman and therefore owned by USAP upon sale. That did not give USAP the right to copyright the entire software code. On behalf of Thomas and I, I understand that argument because US parts bought from the Partsman principles. Thomas is not one of them. On behalf of your clients, I have a harder time understanding that argument because it was your client that appeared to sell to USAP the whole thing. I understand that. We're not talking about that. Why should we listen to that distinction for the benefit of your client who purported to sell the whole thing, and now you're standing here and saying, but they claim they own the whole thing. They trusted us, and as a result, they're out entirely because they pled a claim based on what they thought they bought from us. But they knew from the beginning of the case what the position was. This wasn't a secret from the beginning of the case. If, in fact, they then understood that we didn't own it, our position was we didn't own it, we made it clear that we didn't own it, that Thomason owned it, he didn't sign the agreement, he didn't give an assignment, he never signed anything, they then had the ability, if they wanted to, to identify that which was, quote, the enhancement. In fact, they didn't copyright manager in 2006. They didn't copyright manager 2005 until after the lawsuit and after they joined Thomason. Well, that, I mean, the registration factor doesn't change the copyright ownership, right? As to whether it was work for hire or whether or not it's, whether it's common law copyright or copyright under statute. That's true. The fact, however, is that we're dealing with whether or not PartsGeek, the entity that has admin that entered into an agreement with Thomason, a license agreement, and asked Thomason to create a software program for it, is guilty of copyright infringement or violating trade secrets when the alleged trade secret is the entirety of the software source code, which is what counsel said again this morning. How is it that anybody could violate this entire trade secret when there's an admitted aspect of that trade secret that belonged to Thomason? So from the standpoint of what was before the district court, what was before the district court on the issue of copyright infringement and trade secret was we own everything from the beginning to the end. And the court found that based upon the fact that Thomason created it before employment, that they didn't own that. And there was never an attempt to break apart those aspects of what were non-derivative, what were enhancements, even after the parts bin people were no longer associated with USAP. Well, why did it have to be all or nothing? Well, when you say, why does it? Well, if I lay claim to a piece of property and it turns out that, you know, there's an easement so you can't have that piece of property, that doesn't necessarily abetiate my claim to a piece of property. In this case, you're basically saying USAP overreached by trying to claim everything. And it turns out they don't have any kind of good claim to the first part. But why does that mean they can't pursue or shouldn't be allowed to go to trial on the subsequent developments? Because it's really hard to accept the proposition that there weren't subsequent enhancements created at the time when Thomason was employed. I mean, Ottovin's the best example. It's clearly something done while he was employed at parts bins. So why isn't that on the table? I guess the problem is that if we were at trial and during the trial the evidence came in and there was a motion made to amend to conform to the evidence, we might be arguing about something different. But what happened in this case is USAP made a claim. That claim was tested in the district court. And that claim was found wanting in the district court. And now what they'd like you to do is to say, give us a chance to come back and present some new claim, some new theory. We didn't do it in the court below. We tried to do it. Is it really a new claim? If you're claiming infringement and it turns out you only own part of the bundle of rights you claim to own, have you waived the ability to claim infringement for that part of the bundle by having overreached the first time? Well, I don't know how we could defend an infringement claim if we don't know what we allegedly infringed. It's clearly identified what you allegedly infringed, manager. The catch is that they didn't own all of manager. But does that mean that they can't pursue the claim for the part of manager that they did seem to have a good, at least a summary judgment type claim? Well, the only thing that we know is one application that's in the record. The attempt to change that theory and to present a different picture, which was through the expert report that was not subject to a request for a 56-F extension. It was mentioned in it, but there was no request for it. There is no issue on appeal as to whether or not the district court abused its discretion in denying the 56-F, although raised it's not covered in this brief. There are issues of waiver throughout, including the argument that when you advance a claim and now you want to change the claim, the question is where's the appropriate forum to do that? I don't believe it's before this Court that you get the chance to say give us a ---- That's really the question I'm trying to raise. What is it that makes this all or nothing? And I hear your answer, and it's a plausible answer. Look, you proceed in court on a theory, that's your theory. You can't change it too late. And so that's really ---- I'm not trying to argue in a negative fashion. I'm trying to focus on what is it that should cause us to say even if they have rights during that time, they can't proceed with those rights now. But that's putting the rabbit in the hat as to whether or not the enhancements, whatever those enhancements were, were in fact worked for hire at that point in time based upon what the understandings of the parties were going into the transaction. And I understand my stance ---- I've got to say, from my perspective, it's clearly not something you can win summary judgment on. And I think it's nearly summary judgment the other way, unless there's something that demonstrates that USAP understood while he was employed by USAP that he owned what he was working on. Well, there was evidence as to the report by one of his superiors where he's identified as the system owner. I don't care about that. I'm just saying he's hired. He's employed. He's getting a paycheck. What are they paying him for? Well, they're paying him for the work on this thing. I don't know what they're paying him for. I don't know what VersaParts is. I don't know how that ties in to anything else that's here. We're not talking about any aspect of whatever Thomasson did going forward at USAP. The fact of the matter is that ---- Why not? That's part of what's alleged to be infringed. I don't know what's ---- That's the problem. I don't know what's alleged to be infringed because I don't know what supposedly happened from May of 2006 until he quit in 2008 that was created at USAP that apparently or supposedly exists in admin. I don't know that. The record doesn't reflect that. There's never been an argument as to what was created during that two-year window. You can't win summary judgment on that unless you can prove there was nothing copied, and I don't see any evidence to support that proposition. So how do you win summary judgment based on that argument? Well, the burden is upon the proponent of the infringement. Well, as I understand Ms. Albers, her position is that Mr. Thomasson owns everything and they own nothing. So during the period of her, so far as she's concerned, if I understand it properly, they gained nothing except a license to develop whatever they may have developed. Whatever? I gather her point is that's nothing. He owns nothing. Did I miss the point? That's her point. Now, do you agree with that? I don't know what Mr. Thomasson's agreement was with USAP, and I don't believe as it relates to my client in the allegation that admin is an infringing program. I don't believe that admin has any application or implication for my client because I don't see where there's been evidence that manager enhancement. Again, the burden is upon the proponent of the infringement to say here is what was created in manager post-2006 or versa parts, and here is what is in admin. And that's how you parts geek have infringed upon our copyright and our trade secret. It wasn't there. There was no more evidence that USAP presented than what they presented on the use of the keyword ROI data. There was no evidence of damage, which is an element. There was no evidence of use. In fact, what is incredibly telling in this case, which supported the, we believe, the award of counsel fees, is the fact that the evidence was supposedly that their vice president of marketing saw parts geek's name in close proximity to keywords somewhere at some time, but no evidence of when, where, and what. But most incredible is the fact that during his deposition, he testified that he, in fact, made a chart. He made a chart to support all of his observations, gave it to in-house counsel for USAP, and that chart never appeared in this case. That's the consistency of the arguments of USAP. And then when they argued on reconsideration and they argued in opposition to the award of counsel fees, as it related to the ROI data, it wasn't that it appeared in March and April of 2009, but there was a spike in traffic in the summer of 2008. Or it was some alleged discovery abuse. Every time that they couldn't present or failed to present any facts to give rise to a genuine issue of material fact, it was somebody else's fault or a new theory was presented. That's why the court below's decision to award counsel fees and costs was proper. We respectfully submit that on this record, there are no genuine issues of material fact for which reversal is mandated. I do want to touch on the antitrust cross-appeal, unless there are some more questions on this phase. Touch very briefly. Okay. Very briefly. Thank you. Essentially, the district court viewed the lay evidence of Mr. Teneri and Mr. Mann to be insufficient and inadequate, and that there was truly a need for expert testimony. We believe that lay witnesses under Eighth, Ninth, and Tenth Circuit case law, which are cited in our brief. I've got to tell you, the definition of relevant market is pretty important, and I have some trouble with the proposition that these witnesses are in a position to define the relevant market, particularly a market that excludes retail operators. I'm mystified by that. Well, I understand they gave their explanations. I bought parts at auto stores. I've never bought an auto part online. I bought them at retail stores, and I didn't need to take them to somebody else to install them. And the notion that people buying at the local Napa store are incapable of installing things. Look around the people I see in the local Napa store. They're not incapable of installing things, so. I understand. We also believe that the predatory pricing aspect where the defense was a computer glitch is just that. That is a defense that raises an issue. It's a question of whether or not you're going to determine credibility. There's no question that they targeted Parts Geek in the evidence. There's no question that they targeted WorldPak. There's no question that the only evidence of this glitch was as to WorldPak parts. And there's no question that by offering free shipping on only these WorldPak parts, they were selling the products below cost. The defense of this is more than briefly, and it is not necessary to respond to what we heard in oral argument beginning, so. Thank you very much. Thank you. So is your argument waived? No, Your Honor. It's not waived. First of all, there's the facts. All the facts that are necessary to reverse and render were before the district court. And the facts that weren't before the district court and the argument that was made late was a result of some tardy discovery, Your Honor. So I don't believe that it's waived at all. And I believe that the district court, in its decision, as we started off this morning, had in mind that argument whenever it made its derivative finding. I read that as the court saying that Section 106.2 trumped 201B. And I believe that's what the district court had in mind, and I believe that's what was teed up by the facts in the case law. So when did you? Our opening brief, if I may, Your Honor. Yes, please. Did, at page 31, absolutely address the work-for-hire issue in this case. And, Your Honor, I don't believe our theories have shifted in a sense that we've been playing games. I think what we're hearing is who's on first. We've heard Mr. Thomason's counsel argue that he's the owner of all of the works. We have an unambiguous agreement where the other co-defendants sold it to us. And there's nothing at all inconsistent with the position that we own all of it or, in the alternative, we own some of it, because those facts exist. I think that argument, as I understand it, is that you can't sell what you don't own. And if they didn't own it, they couldn't sell it to you. Well, that may be true, Your Honor. But that's what we saw in the agreement. And at the minimum, there are extraneous documents, e-mails, that we have that say that we bought it, that we own the manager. They say that they have evidence of the iBanker being told that it's a license. But none of that evidence that they can point to are very specific. At some point, there appears to be, and I forgot, is it your pretrial statement, in some place in the district court, there's apparently an acknowledgment on the part of your client that something is pre-employment. Yes, Your Honor. In the pretrial statement, there is, and this is a fault of counsel, but there is a reference, an acknowledgment to, and I believe it's called some earlier version of manager, it really should have been L&E Com, but that is recognition that L&E was owned by Thomason. So at some point in the district court, there's at least a recognition that there's this pre-employment piece that's owned by Thomason. The claim asserted to the district court still appears to be an everything claim. You noted in the alternative, but was that in the alternative claim put to the district court, that is that you would own less? It ultimately was put to the district court, Your Honor. Ultimately when? I couldn't pinpoint to the court right now. I mean, I may understand some of the reason for the evolution, but it is true. The district court's entitled to evaluate the claim that's in front of him at the time. And I'm having trouble pitting down just because I've got too many things going through my head now. But what's your understanding as to what claim was before the district court that he evaluated? And take as a given for this purpose is that the 56F application is denied. He's looking at what's in front of him at that time. What was the claim that he evaluated? In the first instance, Your Honor, it began as we own it all, and we recognize that there was an antecedent work, but based on the reps and warranties and the acquisition agreement, that it did not contain any source code or derivations that were owned or licensed by someone else. So that's what steered my client down the we own it all path. But I'm focusing on the district court at the time that he makes the summary judgment determination. Is it simply a we own everything claim that he's got in front of him? I couldn't answer that, Your Honor. If it is. I don't know, but I know that the facts remain unchanged in every fact that we know. If the claim is articulated as a we own everything, why is it the district court should kind of pick and choose and say, well, you actually don't own this part, but I'm going to let you proceed with the claim that you may own this part over here? If you present it as an all or nothing, why is it the district court shouldn't take it that way and say, well, you don't own all, so you can't survive summary judgment? Well, here's my answer, Your Honor. The court got it wrong on the facts and the theory before it as our contention. So we believe that we're entitled to go back and present that argument to a jury, but we believe the court got it wrong on the facts. The court addressed the facts and the court said. Got what wrong? The court said. Excuse me. You say got it wrong. Got the conclusion that it was a derivative work, not because there was a comparison, but the court said even though it was work for hire, citing 106-2 said he is the original copyright owner, it is a derivative work. So if there's a. And the court got that wrong on the facts and the law. So if there's a legal error, because I think that's consistent with my recollections, that the district court relied on its interpretation of the derivative work. So let's assume we think that's a legal error. But we can uphold the district court on a different ground, which would be that, well, even if this derivative work analysis is incorrect, the district court was correct that there wasn't a genuine issue material. But the fact that USAP owned the whole thing, I guess that would be the alternative ground. Why shouldn't we uphold it on that ground if you never made the argument that you owned part of it? Well, Your Honor, I'm not sure. Again, I apologize. I'm not sure that that wasn't raised at least implicitly, and I believe it was, in the party's argument. But I think that the fact that the court got it wrong, I mean, the way the court would have to uphold it would be that we waived some argument. And given the facts of the case, Your Honor, I think that would be a darn shame to use the legal term. I think it would just be wrong, frankly. Let me focus. You say that the court got it wrong, but got it wrong may vary depending upon the argument in front of it. The court clearly said in its summary judgment order that USAP can't demonstrate it owns manager because the evidence is undisputed that Thomason is the owner of at least the first piece of it. The possible legal error, I understand, but it could also be saying, and look, your claim is that you own everything, and you don't because it's now undisputed that Thomason owns the first part, and you haven't presented a lesser claim. So summary judgment's granted on the claim you presented. That's why I wind up going back to the question, is the court obligated either because you presented the alternative claim or because he's obligated to parse it somehow to say, well, you may not own this part, but I'll still consider the possibility you own something later. And defendants have argued that your client waived that because it came in saying all or nothing. I understand, Your Honor. The argument before the court was that we agreed that Thomason had ownership rights in L&E Comp. Based on the acquisition agreement and the reps and warranties, we believe we owned all of manager. So the court, again, on the facts and on the law, got it wrong by saying that, again, there were no facts before the court other than our 56F report that said that there's nothing in common between them. But other than that, there was the only evidence before the court was Thomason's very thin declaration that said, by the way, it's derivative, when two weeks prior in his deposition, he couldn't identify anything that was in common between them. So on the record, the court, again, didn't make a factual determination. The court made a legal determination that 106-2 trumps 201-B. And I believe that's just wrong as a matter of law. Once you accept that, and we hope you do, again, I can't imagine a situation where it says, well, they still win because you were led down this path with the acquisition agreement, and this was the argument before the court. I hate to extend it, but I sort of have to on this because they're saying, and they say in their briefs, that, look, all of this was made known to USAP and its investment bankers. Thomason made it clear that he owned this thing or he said he owned this thing. Is that true? And, well, we dispute that. I mean, they have evidence that our banker was told that. There is evidence that Thomason refused to sign the assignment agreement. But, again, it's our understanding that's because he understood it to be retroactive. That's an agreement that everybody signed. And, by the way, on that point, on the breach of contract claim, I believe the court just facially, the district court, got it wrong. If you look at the settlement agreements, they contemplate extant confidentiality obligations outside of those agreements. The releases probably give up as a potential misrepresentation claim against the parts or against the parts bin people for selling something that now it appears they didn't own. I don't know about that. That's somebody else's problem, not ours. I would reject that. Your Honor, just on the ROI data, again, the defendants were sanctioned for not producing their ROI bidding information. We never got it. Again, this is a miscommunication between district and district. Well, see, I don't know the magistrate judge and the district judge are expected to talk to each other. You've got the opportunity to bring it up to the district court. District court never talks about it because you didn't bring it to them. So anything else that you absolutely must say? Just one thing, Your Honor, because I can't help myself. You can try hard, but go ahead. This theory of predation that they've argued, I believe that the antitrust claim is dead and I don't want to waste the court's time, but the theory of predation really doesn't make any sense. At the end of the day, they don't show any evidence of harm to competition or harm to them, harm to a competitor, but not even a nascent threat of harm to competition because they haven't done a market study. But the idea that these minuscule sales somehow are a brilliant predation theory, the less that we sell below cost, the less we have to make up with super competitive prices, makes no sense. If you buy that theory, well, then you don't do any predation at all, and that's the best predation. Thank you, Your Honor. Thank you. We thank all three of you for your excellent arguments. It's a complicated case. We're going to take about a ten-minute recess before we hear the final case on this morning's calendar.
judges: Farris, Clifton, Ikuta